EL PUEBLO DE PUERTO RICO, apelado, *v.* JOSÉ A. LABOY, acusado y apelante.

*Número:* CR-79-43      *Resuelto:* 30 de junio de 1980

---

*Julio Eduardo Torres, Gregorio Lima* y *Pedro Baigés Chapel,* abogados del apelante; *Héctor A. Colón Cruz, Procurador General,* y *Lirio Bernard de González, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Contra José Antonio Laboy Delgado se presentaron acusaciones por el delito de tentativa de asesinato y por infracción del Art. 8 de la Ley de Armas. Hizo alegación de no culpable. Celebrado el juicio ante jurado, el acusado fue declarado culpable y condenado a cumplir una pena de 7 a 10 años de presidio por el delito de tentativa de asesinato y una pena de 3 a 5 años de presidio por la infracción del Art. 8 de la Ley de Armas.

No conforme con las sentencias dictadas, apeló. Señala la comisión de seis errores. Los primeros cinco impugnan el procedimiento utilizado para seleccionar el jurado. El sexto impugna la negativa a concederle los beneficios de una sentencia suspendida.

El mismo día en que comenzaba el juicio, el apelante presentó una moción alegando que el panel general de jurados no era representativo de la comunidad. Solicitó la suspensión del juicio y la celebración de una vista. De la negativa del tribunal ante esta solicitud nacen los primeros dos apuntamientos.

Sostiene que cometió error el tribunal de instancia al desestimar de plano la moción de impugnación del panel de jurados, negándose a recibir prueba en apoyo de lo planteado.

■ El Art. II, Sec. 11 de nuestra Constitución dispone que "[e]n los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por doce vecinos del distrito . . .". El Tribunal Supremo de Estados Unidos ha resuelto que seleccionar los miembros del jurado de un grupo representativo de la comunidad es una característica esencial del derecho a juicio por jurado consagrado en la Sexta Enmienda de la Constitución de los Estados Unidos. En *Taylor* v. *Louisiana*, 419 U.S. 522, 530 (1975), expresó: "El propósito de un jurado es precaver contra el ejercicio de poder arbitrario —proporcionar el sentido común de la comunidad como protección frente al fiscal apasionado o errado y en preferencia a la reacción profesional o tal vez demasiado condicionada o prejuiciada de un juez. [Citas.] Este vehículo profiláctico no existe si el cuerpo de jurados se compone únicamente de algunos segmentos especiales de la población o si numerosos grupos característicos quedan excluidos del sorteo para escoger a los jurados. Además, la participación de la comunidad en la administración de la justicia criminal no sólo es consistente con nuestra herencia democrática, sino que es decisiva para la confianza pública en la imparcialidad del sistema de justicia criminal. Limitar el servicio de jurado a solamente algunos grupos especiales o excluir segmentos particulares que desempeñan papeles importantes en la comunidad contraviene el concepto constitucional de un juicio por jurado."

■ El derecho a juicio por jurado consagrado en nuestra Constitución también exige que los miembros del jurado sean seleccionados de un grupo de personas que represente adecuadamente a la comunidad. De no ser así, se desvirtuaría el derecho a juicio por jurado.

■ En *United States* v. *Williams*, 421 F.2d 529 (1970), ante unas alegaciones de error iguales a las de este caso, se resolvió que al apelante correspondía establecer un caso prima facie de discrimen en la selección de los jurados, que gene-

ralizaciones no apoyadas por prueba específica no son suficientes para establecer un caso prima facie, que el hecho de que un panel general de jurados no sea representativo de la comunidad no es suficiente para establecer que el *proceso de selección* es discriminatorio y que al derecho a impugnar el panel de jurados se puede renunciar y al mismo se renuncia si no se ejercita adecuadamente.

En su moción el apelante se limita a concluir que el panel general de jurados no representa adecuadamente la comunidad. No hay indicio alguno de cómo el apelante llegó a tal conclusión ni se aportan datos y estadísticas que la apoyen.

El apelante solicita que sean citados a declarar los comisionados de jurados que actuaron durante el año 1978, el Administrador de Tribunales y el Director de la Oficina de Planes de la Administración de Tribunales. No expone en forma alguna qué declararían estas personas de ser citadas.

██ En nuestro sistema de Derecho se presume que los deberes de un cargo han sido cumplidos con regularidad y que la ley ha sido acatada. Regla 16 (15) y (32) de las Reglas de Evidencia de 1979. *Pérez Aldarondo* v. *Tribunal Superior*, 102 D.P.R. 1, 16 (1974). No es suficiente una mera alegación de irregularidad, hecha el mismo día señalado para el comienzo del juicio y carente de fundamentos y hechos que la apoyen, para interrumpir el funcionamiento ordinario de los tribunales y motivar la investigación especial que solicita el apelante.

En su tercer apuntamiento sostiene el apelante que erró el tribunal de instancia al declarar sin lugar la recusación motivada del jurado Vicente Robles González, a pesar de que a la fecha en que comenzó el proceso dicho jurado era mayor de setenta años de edad.

██ La Regla 96 de las de Procedimiento Criminal establece que para ser elegible para actuar como jurado, una persona deberá "tener cumplidos dieciocho años de edad y no pasar de setenta años". El jurado Vicente Robles González

nació el 22 de enero de 1908. A la fecha en que comenzó el proceso, el 27 de noviembre de 1978, este jurado tenía 70 años, 10 meses y 5 días de edad. La posición del apelante es que una persona "pasa de setenta años" cuando tiene cumplidos 70 años y un día. El tribunal de instancia entendió que una persona "pasa de setenta años" cuando cumple 71 años. La intención del legislador al establecer un límite máximo de edad para servir de jurado fue garantizar indirectamente que los jurados tuvieran la capacidad física y mental necesaria para participar adecuadamente en el juicio. Habiendo determinado el tribunal de instancia que Vicente Robles González no estaba senil ni decrépito y que por el contrario lucía completamente alerta, fuerte y en todas sus facultades tanto físicas como mentales y no habiéndose demostrado perjuicio alguno al apelante, no procede en esas circunstancias revocar la sentencia recaída luego de un largo proceso, por esa sola desviación.

En su cuarto apuntamiento sostiene el apelante que cometió error el tribunal de instancia al denegar la recusación general del jurado por el fundamento de que los procedimientos para la selección del jurado se desviaron considerablemente de las prácticas prescritas en las Reglas de Procedimiento Criminal al permitir que jurados llamados desde octubre de 1978 continuaran sirviendo en noviembre, habiéndose celebrado un sorteo de jurados para el mes de noviembre, y al declarar sin lugar la solicitud de recusación motivada de los jurados Restituto Pagán López y Ernesto Morales, sin que éstos hubieran llegado por sorteo al panel de jurados llamado a servir durante el mes de noviembre de 1978.

La Regla 103 de las de Procedimiento Criminal dispone, cuando la situación lo requiera, la comparecencia de aquel número de jurados que sea necesario y que se designarán por sorteo. Añade que ninguna persona será obligada a prestar servicio de jurado por un término mayor de un mes consecutivamente. La Regla 104 de las de Procedimiento Criminal dis-

pone que se agitará una urna que contenga una tarjeta con el nombre de cada jurado y se sacará de dicha urna el número de tarjetas ordenado por el tribunal.

■ Los preceptos directivos contenidos en las Reglas de Procedimiento Criminal para la selección de la lista de jurados no contemplan que el término de servicio de un jurado se extiende voluntariamente. Los tribunales de instancia deberán favorecer en todo momento el procedimiento establecido en las citadas reglas. Sin embargo, la inobservancia de dicho procedimiento no da lugar a la revocación a no ser que se demuestre que se hizo aviesamente y con el propósito de perjudicar al acusado, o fraudulentamente. *Pueblo* v. *Beltrán*, 73 D.P.R. 509, 514 (1952).

No surge del récord la razón por la cual estos dos jurados continuaron sirviendo en el mes de noviembre. De la exposición narrativa de los trámites relacionados con la selección del jurado no aparece que se le pidiera una explicación al respecto. Otro jurado, recusado por motivos diferentes, manifestó haberse quedado en el panel de jurados al vencer el término por no haber estado presente para excusarse.

■ No habiéndose demostrado que la utilización de jurados que habían extendido su término de servicio voluntariamente tuviera el efecto de discriminar contra o excluir a determinada clase de personas y, por tanto, disminuir la posibilidad de obtener un jurado representativo de la comunidad, no podemos concluir que se ha violado el derecho constitucional del apelante a juicio por jurado. *United States* v. *Kennedy*, 548 F.2d 608, 614 (1977).

En su quinto apuntamiento, sostiene que cometió error el tribunal de instancia al denegar la solicitud del apelante para que se le supliera y se le permitiera presentar como prueba la lista de los jurados sorteados que aparecían sirviendo en el mes de noviembre de 1978. Surge de la exposición narrativa de la prueba que el magistrado que presidió la vista "no objetó a que la defensa tuviese u obtuviese las listas de jurados,

ya que esto es un documento público que estaba a su disposición". Siendo ésta la situación, nada le impedía formular las impugnaciones que creyera pertinentes. Plantea asimismo el apelante una cuestión relacionada con el jurado Norberto Conde Escobar. Aparte de que sólo apunta que fue un candidato potencial, ya que no formó parte del jurado que juzgó al apelante, lo cierto es que nada relacionado con este incidente fue planteado al tribunal de instancia, ni durante el juicio, ni al radicar la moción de nuevo juicio.

Es claro que el apelante no tiene razón en lo que concierne a los otros jurados que alega no aparecían incluidos en la lista general.

En su sexto señalamiento de error sostiene el apelante que cometió error el tribunal de instancia al denegar al apelante los beneficios de una sentencia suspendida. El disfrute de una sentencia suspendida es un privilegio y no un derecho. *Pueblo* v. *Martínez Rivera*, 99 D.P.R. 568, 575 (1971). La ley sobre sentencias suspendidas concede discreción al tribunal sentenciador. *Pueblo* v. *Alvarez Maurás*, 100 D.P.R. 620, 623 (1974). En el caso de autos no existen circunstancias que nos muevan a intervenir con la discreción del tribunal de instancia. No se cometió el error señalado.

*En vista de lo anterior, se confirmará la sentencia apelada.*